1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JOHN J. GUAJARDO, | 1:08cv01071 GSA |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

18
19

## **BACKGROUND**

20    Plaintiff John J. Guajardo ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner") denying his application for disability

22  insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

23  Security Act.  The matter is currently before the Court on the parties' briefs, which were

24  submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate

25  Judge.[1]

26
27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On August 27, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application on or about November 2, 2005, alleging disability since March 4, 2005, due to type 2 diabetes with diabetic retinopathy, hypertension, chronic renal insufficiency, and status post laparoscopic cholecystectomy.  AR 80-82.  His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 7-10, 61-68, 70-74.  ALJ Christopher Larsen held a hearing on October 9, 2007, and issued an order denying benefits on November 13, 2007.  AR 11-18, 508-541.  On May 27, 2008, the Appeals Council denied review.  AR 3-5.

Hearing Testimony

ALJ Larsen held a hearing on October 9, 2007, in Fresno, California.  Plaintiff appeared and testified.  He was represented by Melissa Proudian.  Vocational Expert ("VE") Cheryl R. Chandler also testified.  AR 509-541.

Plaintiff testified that he is fifty-three years old, born May 11, 1954.  He is divorced and has two children, ages 27 and 18.  Neither of his children live with him; he lives alone.  AR 513-514.

Plaintiff holds a valid California driver's license and typically drives four of seven days a week.  He generally goes into town, to pay bills and buy groceries.  AR 514.

Plaintiff completed high school.  AR 514-515.  He did not receive any vocational training.  AR 515.  He last worked in March 2005 as a janitor, and prior to becoming ill, had held the position for about three years.  AR 515.  Plaintiff sustained an injury while "playing ball for the company" and then he began "getting sick" thereafter.  AR 516.  A related workers' compensation case settled.  AR 516.

Primarily, Plaintiff has held janitorial or dishwashing positions.  He also briefly worked as an in home care worker, providing care to his mother.  AR 516-518.  While employed as a dishwasher or janitor over a fifteen-year period, Plaintiff testified that the heaviest weight he would have lifted was about twenty-five pounds.  AR 518.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    Plaintiff does not believe he could have worked any job since March of 2005 as a result

2    of his illnesses.  AR 518.  More particularly, he began to suffer from diabetes, difficulty with his

3    pancreas, hypertension, swollen hands, right leg pain and leg surgery, and issues related to kidney

4    function.  AR 519.

5    Regarding the diabetes, since onset of disability Plaintiff has taken both pills and insulin,

6    through to the present.  When insulin therapy commenced, he would take insulin once a day.

7    Today however, Plaintiff takes insulin three times per day.  AR 520.  Plaintiff testified that his

8    diabetes has not been under control at any point since March 2005.  He follows a diabetic diet,

9    takes his medication as prescribed, and checks his blood sugar daily.  Asked what his average

10   blood sugar results include, Plaintiff testified that the "lowest is 220" and the highest "is almost

11   400."  AR 521.  This is the reason his doctor increased his insulin intake to three times per day.

12   AR 522.  He has been treated by the same physician for diabetes since March 2005.  AR 522.

13   Plaintiff has not specifically been hospitalized for diabetes, yet his diabetes was treated

14   while he was hospitalized for pancreatic care.  AR 522.  He was hospitalized for three months,

15   back in September or October of 2005.  AR 522.  Plaintiff testified that the doctors tried to get

16   his diabetes under control "but it was always up and down."  AR 523.  He testified that his

17   pancreas "erupted" and the doctors told him he was going to die and that he did not have a

18   chance.  AR 523. Nevertheless, he was treated and the doctor told him he had been lucky.  AR

19   523.  Plaintiff still suffers pain every day.  AR 524.  Additionally, Plaintiff testified that the

20   doctors are presently keeping an eye on his kidneys.  AR 524.

21   Asked about his energy level, Plaintiff testified that he is "drained out" about five days a

22   week.  AR 524.  He takes about three naps a day for about an hour to an hour and a half each.

23   AR 524.  He has been napping in this manner since March 2005.  AR 525.  When he does yard

24   work, he can only do so for about ten minutes before becoming short of breath and very tired.

25   His doctors advised him to stop the activity.  AR 525.   Plaintiff does the cleaning and cooking,

26   although often he buys things that can be prepared in the microwave.  AR 526.

27   Surgery was performed on Plaintiff's right leg.  He has a limp and continues to have

28   problems with it. AR 526.  His hands and feet bother him "every day" "five days a week" and

3

1  the numbness lasts all day.  He relieves the numbness by elevating his legs.  AR 526.  About

2  twice a day, "five days" a week or "everyday," he will elevate his leg for about an hour or two.

3  AR 526-527.  When his hands are numb he rubs them.  It helps, but then the numbness returns.

4  AR 527.

5          Plaintiff suffers from difficulties related to his vision.  His left eye is blurry despite three

6  surgeries.  His doctor advised that the surgeries did not help because Plaintiff suffers from high

7  blood pressure.  The blurriness does not go away or fluctuate, and it is getting worse.  Glasses

8  have not corrected the problem.  AR 527-528.  Plaintiff indicated that as a result of the

9  blurriness, he is afraid to drive and it has limited his driving somewhat.  He testified that he

10  cannot read because he "can't see the words at all."  He tries to watch television but it too is

11  blurry.  He is sensitive to light and wears sunglasses to avoid the sun burning his eyes.  AR 529.

12          With regard to hypertension, Plaintiff takes medication daily and follows a diet related to

13  hypertension.  However, he testified his hypertension has not been brought under control.  AR

14  529-530.

15          Plaintiff has been advised his kidney functioning is worsening, and currently functions at

16  twenty-fix percent capacity.  Further, he was told that if the function decreased further he will

17  have to be hospitalized and placed on dialysis.  AR 530.  He experiences a lot of sharp pain on

18  either side of his abdomen, and when he urinates there is a burning sensation.  AR 530.  Plaintiff

19  is beginning to experience back pain in his lower left back on a daily basis.  AR 531.

20          Asked how long he can sit before he would need to get up, Plaintiff said about an hour.

21  He can walk about a block before he would have to stop.  AR 531.  He reported that the heaviest

22  weight he can lift is five pounds without causing pain.  He can concentrate for perhaps an hour

23  before he loses focus and would need to take a break.  He indicated he would have to rest for

24  about two hours before going back to concentrating for another hour.  AR 532.

25          In totality, since 2005, Plaintiff testified that his condition has gotten worse.  AR 532.

26          In response to questions by the ALJ, Plaintiff indicated that he had surgery on his leg

27  within the last two or three years.  AR 533.  Plaintiff was driven to the hearing by his brother.  He

28  sees his brother and sister-in-law almost every day.  AR 533.

VE Chandler also testified at the hearing.  When asked about Plaintiff's past work, the VE indicated his work as a janitor or custodian is classified as medium semi-skilled, and work as a dishwasher is classified as unskilled medium work.  AR 534.

The VE was asked to assume a worker of Plaintiff's education and work experience, who can lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight-hour day, sit six hours in an eight-hour day, and who can frequently balance, and occasionally climb, stoop, kneel, crouch and crawl; the worker must also avoid concentrated exposure to hazards.  VE Chandler advised that such a worker cannot perform Plaintiff's past relevant work, however, such a worker could perform other jobs in the regional or national economy.  AR 535.  Consistent with a full light RFC, such a worker could perform unskilled light jobs such as a silverware wrapper, laundry worker, or usher.  There are 5,700, 56,900 and 6,800 of those jobs, respectively, in California.  AR 535-536.

In the second hypothetical, the VE was asked about a worker with Plaintiff's education and work experience, who can lift and carry five pounds, can sit for thirty minutes at a time and stand for sixty minutes at a time, and must take unscheduled breaks during the day in addition to the customary two breaks and meal period.  VE Chandler testified that were no jobs for that worker in the regional or national economy.  AR 536.

        Medical Record

The record is summarized here with particular regard to the reports of Emanuel Dozier, M.D., and J. V. Glaser, M.D.  Nonetheless, the record as a whole was reviewed and will be specifically referenced if appropriate.

On March 26, 2006, Emanuel Dozier, M.D., internist, conducted a comprehensive internal medicine evaluation of Plaintiff. AR 278-282.  Plaintiff's chief complaints included chronic pancreatitis with pancreatic pseudocysts, chronic cholecystitis, and type 2 diabetes, as well as right ankle fracture with posttraumatic arthritis.  AR 278.  Plaintiff provided a history of two episodes of pancreatitis: one about ten years prior and the second six months prior, when he was found to have evidence of cholelithiasis and underwent cholecystectomy and developed a postoperative infection with chronic abdominal pain that began after surgery. Plaintiff indicated

he had persistent abdominal pain for the previous six months and assigned the pain an eight on a

scale of one to ten.  AR 279.  Plaintiff advised that he had a history of type 2 diabetes and was

not taking insulin.  He had no history of hospitalization for treatment of related complications,

and stated that he has moderate difficulty controlling his blood sugars.  AR 279.

Plaintiff was alert and exhibited no signs of pain, ataxia or shortness of breath.  He

walked with a slight right antalgic gait.  He was able to sit during the interview without

discomfort, and transferred one and off the examination table without assistance.  AR 280. An

examination of Plaintiff's abdomen noted "mild right upper quadrant tenderness with guarding.

There is some mid epigastric tenderness with guarding.  There is a 3-cm postoperative scar in the

right upper quadrant from his previous laparoscopic cholecystectomy."  No other abnormality

was detectable.  AR 281.  Notably, Dr. Dozier recorded normal findings regarding Plaintiff's

coordination and station, and again noted that his "[g]ait was slightly right antalgic."  Plaintiff's

motor strength was a 5/5 in the upper and lower extremities bilaterally, and his grip strength was

5/5 bilaterally.  Plaintiff did not require an assistive device to ambulate.  AR 281.

Dr. Dozier's impression included type 2 diabetes with mild neuropathy, status post torn

Achilles tendon of the right ankle with postoperative surgical scarring and limited range of

motion, status post cholecystectomy, and chronic recurrent pancreatitis with right upper quadrant

abdominal tenderness and pain.  AR 282.  The doctor's functional assessment indicated

Plaintiff's "complicated surgical resection of the gallbladder" would restrict him to occasional

bending, stooping, pushing, and pulling.  He could not climb ladders or work on inclined planes

or uneven terrain, and could occasionally carry twenty pounds, and frequently carry ten pounds.

Lastly, Dr. Dozier found Plaintiff "would be able to stand and walk for 2-4 hours and sit for six

hours primarily secondary to the chronic Achilles tendinitis and postoperative surgical scarring of

the Achilles tendon."  AR 282.

In December 2006, James v. Glaser, M.D. prepared a Physical Residual Functional

Capacity Assessment regarding Plaintiff.  AR 225-233.  Based upon the doctor's review of the

medical record, he noted exertional limitations of lift and/or carry twenty pounds occasionally,

lift and/or carry ten pounds frequently, stand and/or walk about six hours in an eight-hour

1  workday, sit about six hours in an eight-hour workday.  Plaintiff had no pushing or pulling

2  limitations.  AR 228.  Plaintiff could occasionally climb ramps, stairs, ladders and scaffolds,

3  stoop, kneel, crouch and crawl.  He could frequently balance.  AR 229.  Dr. Glaser found no

4  limitation regarding the manipulative, visual, or communicative categories.  AR 230-231.  With

5  regard to environmental limitations, nearly all were unlimited; as to hazards, Plaintiff was to

6  avoid concentrated exposure.  AR 231.

7       ALJ's Findings

8       The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

9  March 4, 2005, and had the severe impairments of status post laparoscopic cholecystectomy, type

10  2 diabetes with diabetic retinopathy, hypertension, and chronic renal insufficiency.  AR 13.

11       Based on his review of the medical evidence, the ALJ determined that Plaintiff retained

12  the residual functional capacity ("RFC") to perform a significant number of jobs.  He could lift

13  and carry ten pounds frequently and twenty pounds occasionally, and stand, walk and sit for six

14  hours out of an eight-hour workday, could frequently balance, and occasionally climb, stoop,

15  kneel, crouch and crawl.  Plaintiff was to avoid concentrated exposure to hazards.  AR 13-14.

16       Given this RFC, the ALJ found that Plaintiff could not return to his past work as a janitor.

17  AR 17.  Nevertheless, the ALJ found that Plaintiff could perform jobs that exist in significant

18  numbers in the national economy.  AR 17-18.

19  **SCOPE OF REVIEW**

20       Congress has provided a limited scope of judicial review of the Commissioner's decision

21  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

22  the Court must determine whether the decision of the Commissioner is supported by substantial

23  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

24  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

25  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

26  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

27  401.  The record as a whole must be considered, weighing both the evidence that supports and

28  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

1   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

2   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

3   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

4   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

5   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

6   Cir. 1987).

7   ## REVIEW

8       In order to qualify for benefits, a claimant must establish that he is unable to engage in

9   substantial gainful activity due to a medically determinable physical or mental impairment which

10  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

11  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

12  such severity that he is not only unable to do her previous work, but cannot, considering his age,

13  education, and work experience, engage in any other kind of substantial gainful work which

14  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

15  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

16  Cir. 1990).

17      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

18  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

19  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

20  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

21  his disability; (2) has an impairment or a combination of impairments that is considered "severe"

22  based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

23  impairment or combination of impairments which meets or equals one of the impairments set

24  forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work as a

25  janitor or dishwasher; yet (5) retained the RFC to perform light work.  AR 11-18.

26

27  _____

28      [3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1    Here, Plaintiff argues that the ALJ impermissibly dismissed the examining physician's

2    opinion.  He contends this Court should reverse and order the immediate payment of benefits.

3    <center>**DISCUSSION**</center>

4    Plaintiff contends the ALJ's decision lacks substantial evidence and is a result of legal

5    error.  More particularly, Plaintiff claims the ALJ impermissibly dismissed the examining

6    physician's opinion.  (Doc. 14 at 9-13.)  Defendant acknowledges the ALJ mistakenly assumed

7    the consulting internist found Plaintiff capable of the walking requirements of light work, but

8    asserts the error was harmless, and thus the ALJ's finding should be upheld.  (Doc. 16 at 3-5.)

9    ***The Findings & The Record***

10   The ALJ's findings include the following:

11   The consulting internist, Dr. Dozier, evaluated Mr. Guajardo in March, 2006, and opined
     he had postoperative healing from the complicated surgical resection of the gallbladder
12   that would restrict occasional bending, stooping, pushing, and pulling.  Environmental
     restrictions included climbing ladders or working on inclined planes or uneven terrain.
13   Mr. Guajardo could lift and carry 20 pounds occasionally and 10 pounds frequently, *stand
     and walk 2-4 hours*, and sit for 6 hours.

14

15   AR 15 (emphasis added).  Subsequently however, the ALJ noted:

16   As for the opinion evidence, the Disability State Agency (DSA) consultants evaluated the
     evidence of record and determined Mr. Guajardo had the exertional capacity for light
17   work with associated postural and environmental limitations [citation].  *The consulting
     physician agreed*.  I afford these conclusions significant weight.

18

19   AR 16 (emphasis added).  Dr. Dozier however did not agree with Dr. Glaser.

20   The definition of light work used by the social security disability system involves:

21   lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
     weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in
22   this category when it requires a good deal of walking or standing, or when it involves
     sitting most of the time with some pushing and pulling of arm or leg controls.  To be
23   considered capable of performing a full or wide range of light work, you must have the
     ability to do substantially all of these activities.

24

25   20 C.F.R. § 404.1567(b).  A full range of "light work" contemplates the ability to stand or walk

26   six hours out of an eight-hour work day.  SSR 83-10.  Initially the ALJ specifically noted Dr.

27   Dozier's limitation that Plaintiff could "stand and walk 2-4 hours, and sit for 6 hours" (AR 15),

28

<center>9</center>

1   then later referenced Plaintiff's capacity for light work to which "[t]he consulting physician

2   agreed" (AR 16).  At the hearing, the following colloquy occurred between the ALJ and VE:

3       [ALJ]: Okay.  Let's assume a worker of Mr. Guajardo's age, education, and work
        experience, who can lift and carry 20 pounds occasionally, 10 pounds frequently, stand
4       and walk six hours in an eight hour day, and sit six hours in an eight hour day.  Who can
        frequently balance, and occasionally climb, stoop, kneel, crouch and crawl.  Let's also
5       assume he must avoid concentrated exposure to hazards. With these limitations, can the
        hypothetical worker perform Mr. Guajardo's past relevant work?
6       [VE]: No, Your Honor.
        Q.  Can he perform other jobs in the regional or national economy?
7       A.  Yes, Your Honor. *It's fairly consistent with a full light RFC.*  So specific
        examples starting with food prep jobs at the unskilled light are 9,700 jobs.
8       Q.  There are 9,700?
        A.  Correct.  They are unskilled light. . . .
9       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
        Q.  All right.  If we were to reduce the standing and walking from six hours total
10      to two to four hours total, would we reduce our hypothetical worker to sedentary work?
        A.  Yes, Your Honor.
11      Q.  Okay. And let's assume another worker of Mr. Guajardo's age, education and
        work experience.  Let's assume he can lift and carry five pounds, sit for 30 minutes at a
12      time, stand for 60 minutes at a time.  And let's also assume he requires additional
        unscheduled breaks during the work day in addition to the customary two breaks and
13      meal period.  Are there any jobs in the regional or national economy that hypothetical
        worker can perform?
14      A.  No, Your Honor.

15  AR 535-536, emphasis added.

16      An ALJ must provide "clear and convincing" reasons for rejecting the uncontroverted

17  opinion of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)

18  (citations omitted).  The opinion of an examining doctor, even if contradicted by another doctor,

19  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

20  in the record.  *Id.* (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).  Here, it

21  appears the ALJ mistakenly concluded that Dr. Dozier and the nonexamining consulting

22  physician came to the same conclusion regarding Plaintiff's ability to stand and walk for six

23  hours in an eight-hour workday.  However, Dr. Dozier expressly found that Plaintiff was capable

24  of walking and standing for only *two to four* hours per day.  AR 282.

25      Also, as a general rule, more weight should be given to the opinion of a treating source

26  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

27  647 (9th Cir. 1987).  The opinion of an examining physician is, in turn, entitled to greater weight

28  than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

1  1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a

2  treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting

3  the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the

4  opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another

5  doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

6  evidence in the record. *Andrews v. Shalala*, 53 F.3d at 1043.

7        The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

8  that justifies the rejection of the opinion of either an examining physician or a treating physician.

9  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can

10 reject the opinion of a treating or examining physician, based in part on the testimony of a

11 nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.

12 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

13       Here, the ALJ's rejection of Dr. Dozier's opinion that Plaintiff was capable of walking

14 and standing two to four hours a day cannot be considered a "specific and legitimate reason[ that

15 is] supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d at 830-831;

16 *Andrews v. Shalala*, 53 F.3d at 1043. It is clear the ALJ was merely mistaken in his later

17 reference to Dr. Dozier's report. *Cf.* AR 15 to AR 16. Thus, because the ALJ was mistaken as to

18 Dr. Dozier's report - because it did not conclude similar to Dr. Glaser's report - the ALJ did not

19 provide a specific and legitimate reason for rejecting Dr. Dozier's opinion. *Andrews v. Shalala*,

20 53 F.3d at 1043. Dr. Dozier's opinion was entitled to greater weight than the opinion of Dr.

21 Glaser. *Pitzer v. Sullivan*, 908 F.2d at 506.

22       Defendant acknowledges the ALJ's error. Nevertheless, Defendant argues any error was

23 harmless because had the ALJ applied the proper rule, the same result would have occurred, i.e.,

24 a finding of not disabled. (Doc. 16 at 3-4.) Plaintiff asserted in response that Defendant's

25 reliance on Grid Rule 201.13 is improper. (Doc. 18 at 3-5.)

26 //

27 //

28 //

1    ***Harmless Error***

2         Harmless error applies in the Social Security context.  *See Burch v. Barnhart*, 400 F.3d

3    676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are

4    harmless" [citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990)]).

5         The Ninth Circuit has cautioned, "[w]e are constrained to review the reasons the ALJ

6    asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.2003).  Here, the ALJ was mistaken as

7    to Dr. Dozier's findings regarding Plaintiff's ability to walk and stand, thus, the Court is inclined

8    to treat the mistake as a failure to consider by the ALJ, requiring remand.  *Cf. Stout v.*

9    *Commissioner, Social Sec. Admin*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("we hold that where the

10   ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant,

11   a reviewing court cannot consider the error harmless unless it can confidently conclude that no

12   reasonable ALJ, when fully crediting the testimony, could have reached a different disability

13   determination").

14        The Ninth Circuit cautioned in *Stout* that it could not

15        "affirm the decision of an agency on a ground that the agency did not invoke in
          making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir.2001) (*citing*
16        *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)).
          Consequently, if the Commissioner's request that we dismiss the ALJ's error as
17        harmless "invites this Court to affirm the denial of benefits on a ground not
          invoked by the Commissioner in denying the benefits originally, then we must
18        decline." *Id*. at 847-48.

19   *Stout v. Commissioner, Social Sec. Admin*, 454 F.3d at 1054.  Here, the ALJ did not provide

20   reasons for dismissing Dr. Dozier's findings per se.

21        Notably, the ALJ found:

22        As for the opinion evidence, the Disability State Agency (DSA) consultants
          evaluated the evidence of record and determined Mr. Guajardo had the exertional
23        capacity for light work with associated postural and environmental limitations
          [citation].  The consulting physician agreed.  I afford these conclusions significant
24        weight.

25   AR 16.  Because the ALJ afforded the mistaken conclusion significant weight, and yet the

26   consulting physician did not agree with the DSA consultants that Plaintiff had the exertional

27   capacity for light work, as light work includes the ability to walk or stand for six hours in an

28   eight-hour workday, this Court shall remand the matter for further proceedings.  By applying

harmless error in this context, the Court would be affirming the denial of benefits on a ground not properly considered originally.  Such an outcome is to be avoided.  *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d at 1054.

## **CONCLUSION**

Because the ALJ mistakenly believed Dr. Dozier and the nonexamining consultive physicians agreed with regard to Plaintiff's ability to walk and stand for a period of six hours in an eight-hour workday, and because the Court concludes that error was not harmless, substantial evidence does not support the Commissioner's decision that Guajardo is not disabled.

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff John J. Guajardo and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

   **Dated:    July 24, 2009**                 _____**/s/ Gary S. Austin**_____
                                               UNITED STATES MAGISTRATE JUDGE